IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELANIE E. S.,[1]

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action 2:22-cv-2373
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiff, Melanie E. S., ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 11); the Commissioner's Memorandum in Opposition (ECF No. 12); Plaintiff's Reply (ECF No. 13); and the administrative record (ECF No. 8). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED,** and Plaintiff's Statement of Errors is **OVERRULED**.

    **I.    BACKGROUND**

Plaintiff protectively filed her DIB application on July 3, 2019, alleging that she has been disabled since March 15, 2018. After that application was denied administratively at the initial

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

and reconsideration levels, a telephonic hearing was held on March 22, 2021, before Administrative Law Judge Deborah F. Sanders ("the ALJ") who issued an unfavorable determination on May 4, 2021. That unfavorable determination became final when the Appeals Council denied Plaintiff's request for review on April 4, 2022.

Plaintiff seeks judicial review of that final determination. She submits that remand is warranted because the ALJ erred when assessing medical opinion evidence. (Pl.'s Statement of Errors 11–18, ECF No. 11.) Specifically, Plaintiff challenges the ALJ's evaluation and discussion of statements endorsed on a checkbox form by Karen Barnhart, CNP. (*Id*.) Defendant correctly contends that Plaintiff's claim of error lacks merit. (Def.'s Mem. in Opp'n, 4–18, ECF No. 12.)

## II. RELEVANT RECORD EVIDENCE[2]

On August 15, 2019, Nurse Barnhart completed a Medical Source Statement. (R. 625–28.)[3] In that checkbox form, Nurse Barnhart indicated all the following limitations. Plaintiff could sit for 30 minutes to one hour at a time for a total of less than two hours in an eight-hour workday. (*Id*.) Plaintiff could frequently carry less than 10 pounds; occasionally carry up to 20 pounds; and could never carry more than that. (*Id*.) Plaintiff could never reach bilaterally; occasionally handle, finger, and feel with her right hand; occasionally finger and feel with her left hand; and frequently handle with her left hand. (*Id*.) Plaintiff could never climb or crawl; rarely balance, stoop, kneel, and crouch; never be exposed to unprotected heights, mechanical

---

[2] Discussion of the evidence is limited to those portions of the record bearing directly on Plaintiff's allegation of error.

[3] The form is difficult to read due to poor copying quality. The parties, however, largely agree about its contents. (Pl.'s Statement of Errors 7, ECF No. 11; Def.'s Mem. in Opp'n, 7, ECF No. 12.)

parts, humidity, wetness, extreme cold or heat, and vibrations. (*Id*.) Plaintiff could occasionally operate foot controls bilaterally, rarely operate a motor vehicle, could occasionally be exposed to pulmonary irritants, and could only be exposed to moderate noise. (*Id*.) Plaintiff additionally states, and Defendant does not deny, that Nurse Barnhart also indicated on the form that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. (Pl.'s Statement of Errors 7, ECF No. 11; Def.'s Mem. in Opp'n, 7, ECF No. 12.)

On February 11, 2020, Nurse Barnhart wrote a one-line letter indicating that Plaintiff had chronic back pain and was unable to work at that time. (R. 638.)

### III. THE ALJ'S DECISION

The ALJ issued her decision on May 4, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 14–34.) The ALJ initially determined that Plaintiff met the insured status requirements through March 31, 2023. (R. 19.) At step one of the

sequential evaluation process,[4] the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2018, the alleged date of onset. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with stenosis; history of right knee arthroscopy; degenerative joint disease at the AC; degenerative disc disease of the cervical spine; migraine; and mild osteoarthritis, right ankle. (*Id.*) The ALJ further found at step three that Plaintiff did not have a severe impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*)

The ALJ then set forth Plaintiff's residual functional capacity[5] ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can frequently balance as well.

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[5] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

4

> Moreover, the claimant can occasionally stoop and crouch, as well as frequently kneel and crawl. Additionally, the claimant must avoid concentrated exposure to noise, such as no work above noise level 3. She must also avoid all exposure to hazards to unprotected heights and no heavy machinery. The claimant should avoid concentrated exposure to bright lights or loud noises as well.

(R. 21.)

At step four, the ALJ relied on testimony from a vocational expert ("VE") to determine that Plaintiff was unable to perform any of her past relevant work. (R. 27.) At step five, the ALJ relied again on VE testimony to determine that in light of her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform including the representative occupations of cashier II, marker, and office helper. (R. 27–28.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 15, 2018, through the date of the determination. (R. 28.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

As previously explained, Plaintiff submits that remand is warranted because the ALJ erred when assessing Nurse Barnhart's medical opinion. The Court does not so find.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[6] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those

---

[6] Because Plaintiff's applications were filed in 2019, they are subject to regulations that govern applications filed after March 27, 2017.

from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, when evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. §§ 404.1520c(b)(2); 416.920c(b)(2). When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(1); 416.920c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(2); 416.920c(c)(2).

Although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. Instead, when an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

Here, the ALJ summarized the checkbox form and the February 11, 2020 letter as follows:

> Karen Barnhart, a certified nurse practitioner, opined that the claimant could perform a substantially reduced range of sedentary work that would be disabling.

7

> (Exs. 8F, 11F-2). It appears Ms. Barnhart is from Lower Lights Christian Health Center and treated the claimant in 2019. (Exs. 6F, 12F, 15F).

(R. 26.) The ALJ then explained that Nurse Barnhart's opinions were not persuasive. She wrote the following:

> Regardless, these opinions are unpersuasive, as they are inconsistent with the medical evidence of record, showing less physical restrictions. As noted, physical examinations and diagnostic testing revealed some limitations, but none that exceed the residual functional capacity in this decision. (Exs. 14F-16F). For instance, it was noted that while the claimant was sometimes noted as having an antalgic gait, she was full weight bearing without the use of an assistive device (6F-14); she was noted to have normal gait and station (4F-3); normal musculoskeletal findings (12F-43, 52, 74; 16F-62); Ms. Barnhart is also not an acceptable medical source for purposes of diagnosing a medical determinative impairment. Nonetheless, for purposes of establishing the most the claimant can do, the undersigned reviewed her records, but determined that the record as a whole does not support her opinion concerning the claimant's physical functioning.

(R. 26.)

The parties apparently agree that the ALJ erred by finding that Nurse Barnhart was not an acceptable medical source ("AMS"). (Pl.'s Statement of Errors 13, ECF No. 11; Def.'s Mem. in Opp'n, 15, ECF No. 12.) A medical opinion is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in several enumerated areas. §§ 404.1513(a)(2); 416.913(a)(2) (emphasis added). The regulations further provide that AMSs include, among other providers, a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ." 20 C.F.R. §§ 404.1502(a)(7); 416.902(a)(7). In Ohio, a Licensed Advanced Practice Registered Nurse includes persons holding a certified nurse practitioner's license. Ohio Rev. Code § 4723.01(O)(4). Because Nurse Barnhart was a certified nurse practitioner, she was an AMS.

8

Nevertheless, Defendant argues, and the Court agrees, that the ALJ's error about Nurse Barnhart's AMS status was harmless. The ALJ did not find that Nurse Barnhart's opinions were unpersuasive because she was not an AMS. (R. 26.) Nor did the ALJ fail to assess and evaluate them. Rather, the ALJ expressly indicated that even if Nurse Barnhart was not an AMS for purposes of diagnosing medically determinative impairments ("MDIs"),[7] she compared her opinions to the record evidence for purposes of establishing the most that Plaintiff could do—*i.e.*, to determine Plaintiff's RFC. (*Id*.) Moreover, the ALJ wrote that Nurse Barnhart's opinions were "inconsistent with the medical evidence of record" and that "the record as a whole [did] not support her opinion about [Plaintiff's] physical functioning," thereby demonstrating the ALJ's awareness of and appreciation for the consistency and supportability factors. (*Id*.)

The ALJ further explained that Nurse Barnhart's opinions were inconsistent and unsupported because examinations and diagnostic tests showed some limitations, but none as extreme as the ones opined by Nurse Barnhart. (*Id*.) For instance, the ALJ noted that although Plaintiff sometimes had an antalgic gait, she was also capable of full weight bearing without the use of an assistive device. (*Id*.) Substantial evidence supports that explanation—during an examination on June 19, 2018, Plaintiff's gait was antalgic, but she was capable of full weight bearing and did not need an assistive device. (R. 585.) Likewise, she was capable of full weight bearing and did not need an assistive device during a June 4, 2018 examination. (R. 577.) The ALJ also noted that Plaintiff sometimes had normal gait and station. (R. 26.) Substantial evidence supports that observation too—on June 4, 2018, and March 1, 2019, examinations found that Plaintiff had normal gait or normal gait and station. (R. 522.)

---

[7] Plaintiff does not argue that the ALJ erred when determining her MDIs at step two.

9

The ALJ also found that Nurse Barnhart's opinions were inconsistent and unsupported because examinations revealed normal musculoskeletal findings. (R. 26.) The record also substantially supports that determination. Examinations found that Plaintiff had normal strength, or 5/5 scores on strength tests (R. 522, 717–18, 853, 852, 865), and normal muscle tone (R. 585, 522, 852, 865). One examination noted that Plaintiff had no evidence of muscle atrophy. (R. 723.) Examiners wrote that Plaintiff had normal musculoskeletal examinations and that their visual inspection of Plaintiff's extremities were normal. (R. 681, 690, 706, 814, 712.) Examiners also found that Plaintiff had normal or full range of motion in her neck (R. 814, 811, 777) and in all other areas except her lumbar spine and hip (R. 719, 720, 721, 852, 865). One examination found that Plaintiff could heel toe stand, which demonstrated good strength. (R. 852.) Testing also revealed that Plaintiff had full grip strength. (R. 718.)

In short, the ALJ cited several record-based reasons for finding that Nurse Barnhart's opinions were inconsistent and unsupported. Plaintiff nevertheless contends that the ALJ's supportability analysis was deficient. (Pl.'s Statement of Errors 13, ECF No. 14–15.) Plaintiff particularly argues that the ALJ erred by failing to discuss what evidence Nurse Barnhart cited in support of her opinions as required by the governing regulations. (*Id*.) Defendant, however, responds that the opinions that Nurse Barnhart endorsed in the checkbox form were "conclusory and lacked explanatory support or reference to specific clinical observations or objective findings." (Def.'s Mem. in Opp'n, 13–14, ECF No. 12.) Defendant is correct—the Medical Source Statement appears to be nothing more than a checkbox form. Courts routinely find that such forms lack supportability. *See Zachariah G. v. Comm'r of Soc. Sec*., No. 2:21-cv-1600, 2022 WL 883769, at *9 (S.D. Ohio March 25, 2022), *report and recommendation adopted*, 2022 WL 2339444 (S.D. Ohio June 29, 2022) ("[B]ecause the statement was in the form of a checklist,

without any additional comments or annotation, it lacked any supporting explanations or citations to relevant medical evidence, which are central to the supportability factor."); *Laney v. Comm'r of Soc. Sec.*, No. 5:21-cv-01290, 2022 WL 2176539, at *6 (N.D. Ohio June 16, 2022) ("Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion.") (citing cases). A checkbox form, like the one completed by Nurse Barnhart is "weak evidence at best." *See Hernandez v. Comm'r. of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citation omitted). Indeed, they are so lacking, they can be discounted even where an ALJ has not expressly indicated that they are unpersuasive because they are checkboxes. *Laney*, 2022 WL 2176539, at *6 n. 2 (citing *Marks v. Comm'r of Soc. Sec*., No. 1:16-cv-02848, 2018 WL 1801609, at * 8 (N.D. Ohio Jan. 12, 2018)). Such is the case here.

Plaintiff also urges that the ALJ's consistency analysis was deficient. (Pl.'s Statement of Errors 15–18, ECF No. 11.) In support, she cites other record evidence and alleges that it is "fully consistent" with the extreme limits opined by Nurse Barnhart. (*Id*.) But Plaintiff cannot establish a lack of substantial evidence by pointing to evidence that might be support a different conclusion. *Blakley*, 581 F.3d at 406. Instead, she must demonstrate that the record is devoid of evidence that would allow a reasonable mind to accept the ALJ's conclusion. (*Id*.) Plaintiff has not done so.

The Court further notes that the record—including treatment records, objective testing results, and prior administrative findings—contains ample support for the ALJ's ultimate RFC determination. Most notably, the RFC that the ALJ assessed for Plaintiff was wholly consistent with the limitations that the state agency reviewing physician found at the reconsideration level. (R. 21, 95–96.) Those findings, and the RFC that the ALJ assessed, were in fact, more limiting

11

than those opined by the consultative examiner, suggesting that the ALJ carefully weighed the various limits offered by different experts. (R. 21, 717–725.)

Accordingly, the Court finds that the ALJ did not commit reversible error when considering and evaluating the statements endorsed by Nurse Barnhart in the checkbox form that she completed on August 15, 2019. Plaintiff's contention of error lacks merit.

## V. CONCLUSION

For all the foregoing reasons, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**


    /s/ *Chelsey M. Vascura*
    CHELSEY M. VASCURA
    UNITED STATES MAGISTRATE JUDGE